[No. 15088.  Department Two.  March 31, 1919.]

E. C. ARNOLD, *Appellant*, v. H. W. CARROLL, *City Clerk of the City of Seattle, et al., Respondents,*
THEODORE N. HALLER, *Intervener.*[1]

MUNICIPAL CORPORATIONS (41) — ORDINANCES — REFERENDUM — EMERGENT ACTS. Under Seattle city charter, art. 4, § 1, requiring an emergency ordinance to state the emergency in one section of the bill, the emergency must be expressly declared; and it being negatively decided by failure so to do, the courts will not usurp the legislative functions and declare the emergency.

SAME (41)—REFERENDUM—POWERS OF CITY AND COUNCIL. A referendum vote under Seattle city charter, art. 4, § 1, cannot be defeated by the failure of the council to provide the election machinery for a referendum election; since the referendum suspends the taking effect of the act, and the council has power to provide the machinery.

SAME (41)—REFERENDUM — CHARTER — CONSTRUCTION. A charter provision authorizing three members of the city council to invoke a referendum vote on a franchise ordinance, means that there can be no emergent franchise ordinance in the sense of depriving such councilmen of their power to invoke the referendum.

Appeal from a judgment of the superior court for King county, Dykeman, J., entered July 24, 1918, dismissing an action for an injunction, upon sustaining a demurrer to. the complaint. Affirmed.

*Kerr & McCord,* for appellant.

*Walter F. Meier* and *Frank S. Griffith,* for respondents.

*Corwin S. Shank* and *H. C. Belt,* for intervener.

PARKER, J.—The plaintiff, Arnold, commenced this action in the superior court for King county, seeking a judgment enjoining the submission to the electors of the city of Seattle, under the referendum provisions of the charter of that city, of a franchise ordi-

[1]Reported in 179 Pac. 801.

nance passed by the city council. A demurrer to the complaint being sustained by the trial court, and the plaintiff having elected to stand upon his complaint and not plead further, judgment of dismissal was rendered against him, from which he has appealed to this court.

The controlling facts appearing in the allegations of the complaint may be summarized as follows: On April 22, 1918, the city council passed an ordinance (No. 38,413) entitled:

"An Ordinance granting to the National District Telegraph Company of Seattle, Washington, its successors and assigns, a franchise to operate a signal system in the city of Seattle, State of Washington."

The ordinance granted to the company a franchise to construct and maintain over and under the streets of the city, poles, conduits, wires, and apparatus, for the purpose of operating a signal system by the use of electric current. On May 2d, the ordinance was vetoed by the mayor, and on May 13th was passed over his veto by a vote of six of the nine members of the council, the charter requiring a two-thirds vote of the nine members of the council to accomplish that end. On May 21st, three members of the council signed and filed with the city clerk a paper invoking a referendum upon the ordinance, demanding and directing that it be submitted to the electors of the city for their ratification or rejection. On January 11th and 12th, there were also filed with the city clerk referendum petitions, signed by electors of the city, demanding a referendum vote upon the ordinance. The ordinance does not contain any emergency clause or any declaration on the part of the council that it "is necessary for the immediate preservation of the public peace, health or safety." Facts are alleged in the

complaint with a view of showing that the ordinance is in fact necessary for the immediate preservation of the public safety.

The principal contention here made in behalf of appellant seems to be that the ordinance is not subject to a referendum vote of the electors of the city, because it is in fact emergent and necessary for the immediate preservation of the public safety, though the city council has not so declared. The provisions of the city charter, in so far as we need here notice them, are the following: Section 1, article 4, provides:

"The second power reserved by the people is the simple referendum, and it may be exercised and ordered (except as to ordinances necessary for the immediate preservation of the public peace, health or safety . . . as to any ordinance which has passed the city council and mayor (acting in their usual prescribed manner as the ordinary legislative authority of the city), . . .

"When an emergency exists in which it is necessary for the immediate preservation of the public peace, health or safety, that an ordinance shall become effective without delay, such emergency and necessity, and the facts creating the same, shall be stated in one section of the bill, and it shall not become an ordinance unless on its final passage by the city council at least three-fourths (¾) of all the members elected vote in its favor (the vote being taken by yeas and nays, and the names of those voting for and against being entered in the journal), and it shall have been approved by the mayor, whereupon it shall be officially published and of full force and effect."

It is further provided in that section that no "non-emergency" ordinance shall take effect within less than thirty days after its passage, during which period a referendum vote thereon may be effectually invoked by petition, signed by the required number of

electors, which "shall operate to suspend the taking effect of the same," and that thereupon the ordinance shall be submitted to the electors for their ratification or rejection at the next general municipal election, or at a special election, as the council in its discretion may decide.

Section 20, of article 4, relates to the granting and repealing of franchises, contains several special provisions relating to franchise ordinances, and concludes as follows:

"A minority of the city council, including not less than one-third of all the members elected, shall have the right and power to invoke a referendum vote on a franchise ordinance without the filing of any petition therefor."

Proceeding upon the theory that the facts alleged in the complaint show that the ordinance is in fact emergent in that it is necessary for the immediate preservation of the public safety, counsel for appellant argue that the question of such emergency becomes one for judicial determination, as a question of fact, independent of the making or failure to make any declaration by the council upon that subject. They cite and rely upon our decisions in *State ex rel. Brislawn v. Meath,* 84 Wash. 302, 147 Pac. 11; *State ex rel. Blakeslee v. Clausen,* 85 Wash. 260, 148 Pac. 28, Ann. Cas. 1916 B 810; and *State ex rel. Case v. Howell,* 85 Wash. 281, 147 Pac. 1162.

In the *Brislawn* case, we held that a declaration of emergency by the legislature did not make the act there in question emergent so as to take from the electors the right of referendum thereon, since the act upon its face, by virtue of its inherent nature, showed that it was not emergent in the sense that it was "necessary for the immediate preservation of the

public peace, health or safety'' or ''support of the
state government and its existing public institutions.''
This quotation is the language of the seventh amend-
ment to our state constitution. No question of fact
was there decided as such; that is, no facts were no-
ticed other than such as were within the court's judi-
cial knowledge; thus rendering it a decision of a ques-
tion of law and not of fact. Observations made in
that decision render it plain that the court will not
ignore a declaration of emergency made by the legis-
lature with reference to an act passed by it, except
where the non-emergency character of the act is be-
yond question and determinable from the face of the
act itself, in the light of facts of such common knowl-
edge that judicial notice may be taken of them; and
we there announced this rule:

"If the act be doubtful, the question of emergency
will be treated as a legislative question, and the doubt
resolved in favor of the declaration of emergency
made by the legislative body."

In the *Case* and *Blakeslee* cases, we declined to hold
the legislative declarations of emergency ineffectual.

This is the first time we have been asked to affirma-
tively decide any law or ordinance to be emergent, in
the face of a failure on the part of the enacting body
to itself make any declaration to that effect. It might
well be argued that the courts could never rightfully
assume to adjudge an act of the legislature, or a
city ordinance of a purely legislative nature to be
emergent, in the absence of a declaration to that ef-
fect by the enacting body. To adjudge such an act
to be emergent, it would seem would amount to the
court's enacting into it something which the enacting
body did not enact into it. If courts can do this, why,
it may well be asked, could they not enact other pro-

visions into such an act? To judicially declare such an act emergent, when the enacting body has not done so, would, it seems to us, be assuming quite a different power from that of judicially determining from the inherent nature of an act itself that it is not emergent. The legislative power to determine that an act of a purely legislative nature is not emergent, it would seem, is necessarily coequal with the power of the enacting body to entirely refrain from passing the act. An emergency declaration in an act is, after all, nothing but a determination upon the part of the enacting body as to when it shall take effect, and is legislation as much as any other provision therein. It is apparent, from the above quoted charter provisions relating to emergency ordinances of a purely legislative nature, that it takes an affirmative declaration by a three-fourth's vote of the council to make an ordinance emergent. In other words, it requires express affirmative legislation upon the part of the council to cause the ordinance to go into effect as an emergent ordinance prior to the expiration of thirty days following its passage. It would seem to follow, as a matter of course, that, when the council remains silent on the question of emergency, such question is necessarily negatively decided; as much so as if the council should expressly declare in the ordinance that it is not emergent. These observations, of course, have reference only to ordinances of a purely legislative nature, which this ordinance is, and not to acts of the council of an administrative or *quasi* judicial nature, evidenced in the mere form of an ordinance.

However, the decision of this case against appellant need not be rested wholly upon these considerations; since, plainly, this is a franchise ordinance, and by the express language of the last above quoted charter

provisions, a referendum may be invoked upon such
an ordinance by three of the nine members of the city
council, which was done as to this ordinance, long be-
fore the expiration of the thirty-day period within
which a referendum thereon could be invoked; and it
is not claimed—indeed, we think it could not be with
any show of reason—that such referendum was not
properly invoked by the three councilmen. It is true
that the charter does not in express terms provide
just how a referendum invoked by three or more coun-
cilmen may be enforced by them in so far as the sub-
mission of the ordinance to the electors is concerned;
but that does not argue, as we view it, that the ordi-
nance has any effect following the invoking of such
referendum prior to its ratification by the electors.
The city council has ample power to provide the elec-
tion machinery, if any be necessary, in such cases, for
want of such provision in the charter or general elec-
tion ordinances. But the failure of any duty on the
part of the council in this respect could in no event
result other than in the suspension of the going into
effect of the ordinance. That is accomplished by the
proper invoking of a referendum upon the ordinance,
whatever may be said as to who has the power and
duty of submitting it to the electors for ratification
or rejection. The referendum power, possessed by
three or more councilmen, as to a franchise ordinance,
is not qualified by the general power of the city coun-
cil to declare an ordinance emergent. It is a special
provision relating alone to franchise ordinances; and
we think means that there is no such thing as an
emergent franchise ordinance in the sense that the
council can deprive three or more councilmen of their
power to invoke a referendum vote thereon.

Some contention is made directed to the sufficiency
of the petitions filed by the electors demanding a refer-

endum. But in view of our conclusion as to the sufficiency of the invoking of the referendum by the three councilmen, it becomes unnecessary for us to notice this contention. We are quite convinced that the judgment of the trial court must be affirmed. It is so ordered.

CHADWICK, C. J., MOUNT, HOLCOMB, and FULLERTON, JJ., concur.